**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BJA Enterprises LLC, | No. CV-20-01901-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| City of Yuma, | |
| Defendant. | |

Plaintiff BJA Enterprises owns land in Yuma close to an airport. Defendant City of Yuma refuses to allow BJA to construct any building on that land which BJA alleges constitutes a taking of its land without proper compensation. BJA is now seeking compensation from Yuma but Yuma alleges BJA lacks standing, has failed to state a claim, and has not joined all necessary parties. Because BJA has alleged sufficient facts to support its claims and Yuma has not persuasively explained why other parties are necessary, the case will be allowed to proceed.

## BACKGROUND

At the motion to dismiss stage, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is uncontested, and matters of which the Court takes judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). The complaint and the briefing on the motion to dismiss use a large number of technical terms but the parties have not provided adequate and clear explanations for each term. Thus, the

following recital of the background facts avoids using those terms where possible.

In November 2018, BJA purchased a property just north of the Marine Corps Air Station Yuma ("MCASY") with the intention of constructing a new automobile dealership. (Doc. 1 at 2–3). Prior to completing the purchase, the City of Yuma reviewed BJA's proposed plat and informed BJA the only construction limitation was a 25-foot height limitation for structures on the property. (Doc. 1 at 2). At the time, the property had all the necessary zoning requirements to construct a dealership. (Doc. 1 at 2). Based on the City's information and the zoning entitlements, BJA purchased the property. (Doc. 1 at 2–3).

After BJA's purchase, two federal government entities took actions affecting the property. First, in July 2019, the United States Marine Corps completed a study regarding MCASY. (Doc. 1 at 3). The study expanded the "clear zones" and "accident prevention zones" surrounding MCASY to include BJA's property. (Doc. 1 at 3). In other words, BJA's property was determined to be in the area where aircraft accidents are most likely to occur.

Then, the Federal Aviation Administration ("FAA") got involved. In early 2019, MCASY reminded BJA that it was required, under 14 C.F.R. § 77.9, to submit a request to the FAA for an "Obstruction Evaluation/Airport Airspace Determination" prior to commencing any construction on the property. (Doc. 1 at 3). BJA submitted the request to the FAA and, on November 20, 2019, the FAA issued a "Notice of Presumed Hazard" ("FAA Notice") that determined "[t]here is no acceptable structure height at this location." (Doc. 1 at 4). The FAA also informed BJA that MCASY would not provide a waiver.[1] (Doc. 1-1 at 4). Essentially, the Notice informed BJA that the FAA opposed any construction on the property.

Also in November 2019, a potential buyer approached BJA seeking to acquire the property for an unaffiliated automobile dealership. (Doc. 1 at 2). On November 18, 2019, the buyer agreed to buy the land from BJA for $870,149.98. (Doc. 1 at 2). But the City

---

[1] It is unclear what statutory or regulatory authority allows MCASY to waive FAA hazard determinations, but it may be possible. *See Morgan v. United States*, 101 Fed. Cl. 145, 155 (2011).

informed the prospective buyer that the City would not issue any approvals for construction on the property partially based on the FAA Notice and the Marine Study. (Doc. 1 at 4). And the City stated that further discussions of development were futile. (Doc. 1 at 4). As a result, the prospective buyer cancelled the purchase and sales agreement with BJA around March 10, 2020.[2] (Doc. 18 at 3).

On July 1, 2020, the City sent a letter to owners of real property located near MCASY, informing the owners about the Marine Study and its impact on development. (Doc. 1 at 4). The letter stated, "the City may not authorize any development of property within the new . . . clear zones unless that development complies with A.R.S. §28-8481." (Doc. 1 at 4). The referenced statute deals with political subdivisions' planning and zoning authority and obligations if the political subdivision is "in the vicinity of a military airport." For tax assessment purposes, the County of Yuma now values each parcel of the property at $500. (Doc. 1 at 4).

On May 12, 2020, BJA served a Notice of Claim on the City, to which the City did not respond. (Doc. 1 at 4). On September 30, 2020, BJA filed this action seeking relief on two counts which it labels: (1) inverse condemnation/regulatory taking and (2) 42 U.S.C. § 1983. (Doc. 1 at 5). It is not clear whether these two counts are entirely duplicative but, in brief, both claims are based on the City's actions allegedly constituting a taking for which BJA is entitled to compensation. BJA seeks only an award of monetary relief and an award of attorneys' fees. (Doc. 1 at 6–7).

On February 9, 2021, the City filed a motion to dismiss arguing BJA lacked standing, failed to join necessary parties, and failed to state a claim upon which relief can be granted. (Doc. 12). In its reply, the City, for the first time, included a request to certify questions of state law to the Arizona Supreme Court. (Doc. 21). BJA filed a motion to file a surreply related to new arguments raised in the City's reply. (Doc. 22). The Court denied the motion but ordered that new arguments first raised in the City's reply would not be considered. (Doc. 24).

---

[2] This fact is not found in the Complaint and will not be considered in resolving the motion.

**ANALYSIS**

**1. Standing and Failure to State a Claim**

The City seeks dismissal under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Both standing and takings claims require causation. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Esplanade Properties v. City of Seattle*, 307 F.3d 978, 984 (9th Cir. 2002). The City argues BJA lacks standing and fails to state a claim because the complaint does not allege the City's actions caused BJA's injury. As such, the two issues will be resolved together.

The City asserts BJA did not allege causation in its complaint because the complaint only concerns "the actions of independent third parties" and "not City actions." (Doc. 12 at 5). In other words, the City argues it was not responsible for preventing construction on BJA's property. The City states that, to this day, it has still not taken any official action regarding construction on BJA's property. (Doc. 12 at 5). However, the City's arguments fail for two reasons. First, MCASY, the FAA, and Arizona's actions are not what gave rise to the takings claim. And second, the City's actions, alleged in the complaint, are sufficient to meet standing's causation requirement and give rise to a takings claim.

Both the Marine Study and the FAA's Notice have no legal effect on BJA's property. The Court of Federal Claims, when addressing a similar study by the military, concluded such a "study, without more, cannot constitute a taking of private property" because the study operates merely as a means to influence local government zoning decisions. *Davis v. United States*, 35 Fed. Cl. 392, 396 (1996) (citation omitted). Similarly, an FAA Notice is an "advisory opinion" with "no enforceable legal effect." *Aircraft Owners & Pilots Ass'n v. Fed. Aviation Admin.*, 600 F.2d 965, 967–68 (D.C. Cir. 1979); *see also Breneman v. United States*, 57 Fed. Cl. 571, 583–85 (2003), *aff'd,* 97 F. App'x 329 (Fed. Cir. 2004) (holding the denial of a permit, which was not required by the FAA Notice, was the relevant action in a takings claim). As such, neither the Marine Study nor the FAA Notice caused BJA's injury.

Arizona's involvement is a little more complicated. Arizona state law provides the

framework for local zoning decisions with varying degrees of discretion. Under Arizona state law, airport zoning is generally delegated to counties and cities. Ariz. Rev. Stat. § 28-8464 (1997). As political subdivisions of the state, cities derive their zoning power from the state and the state imposes some limitations on that power. For example, cities may require permits for construction in airport zoning areas. *Id.* § 28-8470(A). But state law mandates that "[a] permit shall not be granted that will allow the establishment or creation of an airport hazard." *Id.* § 28-8470(C).[3]

The City argues state law removes all discretion when it comes to military airport zoning. The City is partially correct. *Id.* § 28-8481. Cities are required to "adopt and enforce zoning regulations for property in . . . accident potential zone[s] to assure development compatible with the . . . accident potential generated by military airport . . . operations that have or may have an adverse effect on public health and safety." *Id.* § 28-8481(A). If a city includes a property in an "accident potential zone" of a military airport, the state's attorney general must certify the modified zoning plan complies with state law. *Id.* § 28-8481(I).[4] The city is then required to provide notice to property owners in accidental potential zones. *Id.* § 28-8481(G).

Despite the state law requirement, here, the City acknowledges it has chosen not to amend it zoning ordinances to incorporate the military study because "the City still seeks to retain a non-military runway designation [on certain runways] and limit the impact on future property development." (Doc. 12 at 7). The City does not suggest the military, the FAA, or Arizona have attempted to force the City to change its zoning map in accordance with the Marine Study. Thus, the City maintains discretion and remains the governmental entity taking the action.

---

[3] This appears to create a loophole. A city seemingly can allow construction of airport hazards so long as it generally does not require permits for airport zoning construction.
[4] It is unclear how much discretion the state gives cities in military airport zoning decisions regarding accident potential zones. Section 8481(J) suggests cities can disagree with the military's determinations of whether an individual use is compatible with an accident potential zone. And state law does not give the state attorney general a blanket veto. Instead, the attorney general must follow a precise set of procedures and pursue a civil action to enjoin the city's zoning plan that contradicts with section 28-8481. A.R.S. § 28-8481(J), (L).

Indeed, based on the allegations in the complaint, the City's action in this matter caused the alleged taking. According to the complaint, the City informed BJA's prospective buyers that no approvals for construction on the property would be issued and further discussions of development were futile. (Doc. 1 at 4). The City also informed BJA that "the City may not authorize any development of property within the new . . . clear zones unless that development complies with A.R.S. §28-8481." (Doc. 1 at 4). And the City acknowledges that it "has never knowingly issued a building permit in a statutory clear zone." (Doc. 12 at 5). Throughout its motion and reply, the City concedes it would not allow BJA to proceed with construction of a dealership on the property. (Docs. 12; 21). Although the City has not taken any official action, e.g., denying a permit, the City has taken actions to prevent construction on the property that qualify as de facto final decisions.

The Supreme Court's most recent takings case, *Pakdel v. City and County of San Francisco, California*, helpfully explains de facto decisions can amount to sufficiently final decisions to be challenged via a takings claim. 141 S. Ct. 2226 (2021). In *Pakdel*, a married couple partially owned a multiunit residential building as tenants-in-common but, along with the other owners of the building, sought to convert those interests into individual ownerships of certain parts of the building. *Id.* at 2228. While waiting to win San Francisco's backlogged conversion lottery system, San Francisco changed the conversion regulation to require any nonoccupant owners seeking conversion to offer their tenants a lifetime lease. *Id.* After the city approved the conversion, the couple requested the city either excuse them from the lease obligation or compensate them for the lease as a taking. *Id.* The city refused, informing the couple that "failure to execute the lifetime lease violated the program and could result in an enforcement action." *Id.* (cleaned up). The Court held this refusal was sufficiently final for a takings claim. *Id.* at 2230. The Court explained, "all a plaintiff must show is that there is no question about how the regulations at issue apply to the particular land in question." *Id.* (cleaned up). "[N]othing more than *de facto* finality is necessary." *Id.* "Administrative exhaustion of state remedies is not a prerequisite for a takings claim when the government has reached a conclusive position." *Id.* (cleaned up).

The City's decision here is similarly conclusive. Although BJA did not administratively exhaust all remedies, e.g., by seeking a permit, the City has reached a conclusive position. The City has been clear; no construction or development will be allowed on BJA's property. Based on the complaint and briefing, no third party required the City prohibit all development. Accordingly, the City's decision not to allow construction or development is the cause of the alleged injury to BJA and is the basis on which relief can be granted. Accordingly, the motion will be denied. Because the motion to dismiss will be denied, the City will not be entitled to attorney's fees.

**2. Failure to Join**

The City seeks dismissal for failure to join three parties: MCASY, the FAA, and the State of Arizona. Federal Rule of Civil Procedure 19(a)(1) requires a party who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction be joined if

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interests.

And Rule 12(b)(7) allows dismissal for failure to join a necessary party.

The City fails to provide any argument that MCASY, the FAA, or the State of Arizona are necessary parties. Instead, the City simply asserts that MCASY, the FAA, and the State of Arizona are "the only decision makers to date." (Doc. 12 at 7). The City does not explain how the Court is unable to accord complete relief without those parties nor does the City argue the missing parties have an interest under Rule 19(a)(1)(B). Accordingly, the motion will be denied on this issue.

…

1  **IT IS ORDERED** Defendant's motion to dismiss (Doc. 12) is **DENIED**.

2  Dated this 31st day of August, 2021.

Honorable Roslyn O. Silver
Senior United States District Judge